The next case on the call of the docket is agenda number four number one two four six eight eight people the state of Illinois versus Rory John Swenson Mr. Fisher Aaron Shanahan Johnson Good morning your honor May it please the court. My name is Eric Johnson with the office of the state appellate defender, and I represent the defendant appellant in this case Mr. Rory Swenson Mr. Swenson's conviction for disorderly conduct in this case is based entirely on a telephone conversation he had with the school administrator The only conduct in this case is speech Therefore the issue in this case is what speech falls under the protection of the first amendment and what speech is able to be criminalized The first amendment protects all speech unless it falls into a certain narrow unprotected category And here both parties agree that Mr. Swenson's phone conversation can only be criminalized if it falls into one of these unprotected categories Such as true threats or fighting words The first amendment protects unreasonable, unpopular, and even upsetting speech Here the first amendment absolutely protects Mr. Swenson's telephone conversation where he made no true threats and used no fighting words The facts of this case briefly are that Mr. Swenson called Keith Country Day School in Rockford to inquire about enrolling his eight year old son He left his name and telephone number asking for someone to call him back to ask for enrollment He was called back by Monica Prestopa, the school administrator And Ms. Prestopa engaged in a conversation with Mr. Swenson about enrolling his son During that conversation Mr. Swenson asked numerous specific questions about the school's security procedures And what the school's protocol would be in the event of a school shooting And after Mr. Swenson learned the school did not have the security measures in place that he felt were appropriate to protect children He made statements about the need for these measures, he gave some statistics about school shootings And he did make statements broadly that if the school did not take appropriate measures to protect children And something bad were to happen, the blood of those innocent children would be on the hands of those who failed to act Mr. Swenson never yelled, he never stated he had a gun, he never stated he was coming to the school with a gun He made no threats of any kind And the record in this case makes this clear, Ms. Prestopa herself testified twice Affirming that he made no threats and she did not understand him to be making any threats Moreover, the trial court here explicitly found Mr. Swenson did not make any threats against the school or any persons of the school And the trial court found Mr. Swenson not guilty of the offense of attempting to transmit a threat against the school So here the trial court made a finding of fact that there were no threats And that finding of fact is not against the manifest weight of the evidence and should not be disturbed on appeal Despite this finding of fact that there were no threats, the state still argues that Mr. Swenson's conversation should be considered to be an unprotected true threat Now, in addition to the fact that we know it's not because of the record and the factual findings Nothing in Mr. Swenson's conversation meets the definition of a true threat which is unprotected by the First Amendment And isn't this an unobjective analysis? I would disagree, Your Honor So there is an argument, I was about to get to that in my own end There's an argument, so the definition of true threat given to us by Virginia v. Black And then recognized by this court more recently in People v. Relaford Is that a true threat is one where the speaker means to communicate an expression of a serious intent to commit an act of unlawful violence Now, meant to communicate is essential And there is an argument between the parties as to whether the speaker for a true threat, whether there needs to be subjective intent on the part of the speaker And there absolutely does And it's clear not only from the definition of Black, but I would also point this court to U.S. v. Castle which is a Ninth Circuit case But I think the Ninth Circuit really interprets this correctly when it says The element of intent is the determinative factor which separates protected expression from unprotected criminal behavior We need that intent to separate protected speech from criminal behavior And it's clear, the state does argue that it should be an objective test with the focus on whether a reasonable person would foresee the statement as a threat But I think even if we look at the conduct issue in Virginia v. Black We can see that that reasonable person objective standard doesn't work Because in Virginia v. Black the issue was burning crosses And a reasonable person viewing a burning cross would take that as a threat And a reasonable person burning a cross would know that people see it as a threatening gesture and would interpret it as such So I think if we look at the actual facts of Virginia v. Black It's clear that the Supreme Court meant what it said in its definition that there needs to be subjective intent And Castle has this correct Because the Supreme Court didn't find that burning crosses is constitutionally prescribable as a true threat The Supreme Court found that there needed to be proof of an intent to threat for a burning cross to be a true threat prescribable under the First Amendment So I think that it does need to be proof of subjective intent But I would point out that even under what the state identifies as an objective approach taken by a number of federal circuits There still needs to be some intentionality on the part of the speaker In Dutcher, which is a Seventh Circuit case the state cites in its brief The Seventh Circuit The Seventh Circuit found that the threat cannot be based only on whether a reasonable person would consider it a threat But there has to be evidence that the speaker made the statement despite knowing subjectively that the person would take that statement as a threat And this comes partially from Alanis Which admittedly Alanis did not decide a First Amendment question Although it was presented The U.S. Supreme Court and Alanis made a determination based on statutory interpretation But what is significant from Alanis is the Supreme Court said it needed to read Where the statute was silent as to a mental state and the statute dealt with threats The U.S. Supreme Court said it needed to read at a mental state that would separate innocent from wrongful conduct And given that the statute dealt with threats, the Supreme Court found that the minimum mental state needed Was that the defendant either made the statement for the purpose of issuing a threat Or with knowledge that the communication would be viewed as a threat So even under this objective test, there needs to be some intentionality on the part of the speaker That they know whoever is hearing this will consider it a threat However, in this case, whether it's judged on an objective basis or a subjective basis There's absolutely no evidence that Mr. Swenson's phone conversation was a true threat There's no evidence here whatsoever that Mr. Swenson was intending to make a threat And the state can point to none All the questions and statements Mr. Swenson made were about school security Again, the person he was speaking to, Ms. Christopha, said there was no threat And the other evidence in the case supports that Mr. Swenson did not intend to make a threat Or know that anyone would consider what he was doing to be a threat Because, he's not yelling, Ms. Christopha never testified that she made any statements About she was concerned about what he was saying, she never tried to end the phone call She's still engaging in a conversation with him when the police show up at the store He hangs up, goes outside, he's very cooperative with the police When he's arrested, he actually asks the police to go inside and care for his 8-year-old son So there's just no evidence here from which an intent to threaten can be proven But also Can I stop you right there for a minute? The trial court found this was not a true threat But in fact, found him guilty of disturbing the peace  Alright, so isn't that, those very words, the definition of fighting words? No No? Not at all So in Black, the court doesn't say a state may punish those words which by their very utterance Inflict injury or tend to incite an immediate breach of the peace What actually, correct me on this one point, Your Honor I think Black recognizes that inflict injury has been abandoned by the Supreme Court So it's just those words which cause an immediate violent response And therefore a breach of the peace But again You're saying that the statement in Black has been somehow overruled? I'm sorry, I misunderstood Is it still true, according to the United States President That fighting words are those that tend to incite an immediate breach of the peace?  That's the definition, but the definition is more expansive There's a second part And that comes, in Black, what they actually said is That fighting words are those personally abusive epithets Which when addressed to an ordinary citizen are as a matter of common knowledge Inherently likely to provoke a breach of the peace And that's the definition from Cohen v. California But that was recognized by the court in Black As the definitive definition of what a fighting word is So, Chaplinsky, which is where the inflict injury comes from In Cohen v. California, the Supreme Court moved away from the idea of just inflicting injury And I think that's clear, too, from the case cited in our brief Pertel v. Mason, which is a Seventh Circuit case Words that inflict injury alone are not fighting words But I guess that doesn't really matter I think I want to focus on the disturbing the peace part Since that's what he was convicted of And the conviction we have in front of us is specifically disturbing the peace So it seems to me we should be looking at that aspect of the jurisprudence here The fighting words piece Well, turning to that, as I said None of the statements in Mr. Swenson's conversation were fighting words Again, that definition from Cohen v. California Recognized by Virginia v. Black Requires personally abusive epithets Which when addressed to an ordinary citizen Are as a matter of common knowledge Inherently likely to provoke a breach of the peace Only statements that are personally abusive are fighting words Not anything broader than that For example, is it Woodward from the Seventh Circuit that talked about It's a case where someone stood up in a congressional hearing And shouted and disturbed the hearing And the court, even though the substance was protected It was political speech The manner in which the words were used was unreasonable Well, respectfully, your honor I think that's conflating the idea of fighting words With conduct that mixes with speech Which are two different things Both Woodard and the city of Chicago v. Morris Which were cited by the appellate court And are cited by the state in its brief Are actually cases about conduct that mixes with speech Neither of those cases used the term fighting words In neither Woodard nor the city of Chicago v. Morris Which cites Woodard Does the court use the term fighting words Those are issues of conduct And in Woodard specifically There were two defendants in Woodard One of whom stood up in the middle of the congressional hearing And yelled, being an American citizen I don't have to sit here and listen to this But the court didn't find that the words That the defendant in Woodard was using were prescribable It found that the fact that he stood in the middle of a hearing And yelled was what was prescribable And there was a second defendant Who tried to force his way into the hearing And that was also part of the analysis of Woodard But the point is It's not the words that were prescribable It was the other conduct And I think it's actually very clear If you look at, I would point to Couldn't one look at what happened here in this case And look at the manner You say that the speech itself Was just inquiring about The safety precautions at the school Obviously those aren't fighting words in themselves You argue that's not a threat It's a fair discussion Isn't the argument here That the manner in which those questions were asked Was unreasonable? But there is no manner here There's no there there There's no manner because it's on the phone It's just speech Unlike Woodard or unlike these other cases With speech, I'm sorry There's no manner here And I think it becomes clear The fact that it was a 20-minute conversation? The length of the conversation I mean, a length of a discussion Doesn't make it conduct It's still a discussion It's still speech It doesn't transform The length of the conversation Doesn't transform the nature of what it is It's still speech I think it's very clear, Your Honor I would point the court to Harvey v. City of St. Paul Which is a I'm sorry A difficult case to read But I do want to point to the fact that The Supreme Court does talk about the fact that Fighting words despite their nonverbal character I'm sorry Despite their verbal character They're being prohibited for their non-speech elements And the court in that case Compares fighting words to a noise truck That while they both could express ideas It's really the nonverbal Disturbing character of it That is being prohibited And here, we don't have yelling We don't have Mr. Swenson coming to the school We don't have this non-speech element But Ms. Johnson The woman acted on those words Right Does that not have an element to it? To cause the disruption Of the school system That day with the police No, Your Honor And that's the state's conception The state's conception is that Fighting words are any words Which cause the police to be called But if that were true We wouldn't need to be here Because every case the police are called Someone gets arrested and here we are And yet not every case is a crime The fact that the police are called Does not change the character Of Mr. Swenson's conversation Which was speech And it was protected by the First Amendment He's talking about guns And protection And where the children would be And then some comment about Sacrificial blood of lambs On the school On her hands Are we supposed to consider The whole thing in deciding Or are you saying that We parse it out We look, well We asked about guns That's not a threat We asked about this Are not fighting words here Again, I would go back to this definition Of fighting words Being personally abusive epithets Which as a matter of common knowledge Are inherently likely to provoke Fighting words are racial epithets They're standing in someone's face And saying, hey you Expletive or insult Do something about it Because when you look at all these cases And I'm almost I am hesitant to ask this question Isn't the original fighting words In a theater It's not Which is not a personal In other words, you're saying All of the United States Supreme Court Judges prudence on fighting words Is about a personal attack And nothing else Yes, and I think that's clear So where does the fire in a theater Well, I think if you look at my refineries I've explained this very well But that case Shane v. U.S. That the state cites It has nothing whatever to do With a yelling fire in a crowded theater The defendant in Shane Didn't yell fire in a crowded theater So the state's analysis That that was a fighting words case Is misplaced And I think that becomes clear When you look at I'm so sorry Cox v. Louisiana Which comes later Cox v. Louisiana was A case about a rally that was held But in that case The court specifically talked about Those items of conduct Which mix with speech And then allow that speech To be incidentally prescribable And in Cox The Supreme Court refers back To that Shane case From the 1920s or 10s But the point is The Supreme Court clarified That we are talking In fire in a crowded theater We're not talking about the word fire We're talking about The concept of yelling Fire in a crowded theater But here We don't have any conduct Mr. Swanson is engaging In a peaceful phone conversation He's not yelling Ms. Persaud was not saying You are threatening me She doesn't feel Doesn't she feel I'm not sure what she testified to That's why there was no threat But did she say It made me concerned The way he was going The way he was speaking I felt I had to take the action To lock down the school Her testimony was That he made a comment About having gone to the school When he was younger And because he expressed something That made her think He was familiar with the campus She was nervous And so she texted The principal in the next room And said someone on the phone Can make this into a crime People can be nervous That's the point of the First Amendment The First Amendment allows for speech That makes people uneasy And I think it's Going even back to The Supreme Court said You cannot prescribe speech That arouses Public annoyance Unrest or unease Ms. Johnson I want to make sure That I understand The difference between The disorderly conduct statute And the First Amendment So as I understand it If we found That the defendant Violated the disorderly Conduct statute Is it your argument That the statute is Unconstitutional as applied Because it violates The First Amendment In this case under the facts There were no true threats There was a long standing precedent That when the only conduct In order to make The disorderly conduct statute Fit within the framework Of the First Amendment When the only conduct is speech It must be viewed In the framework of the First Amendment May I ask a question The statute of disorderly conduct A person commits disorderly conduct It doesn't act In an unreasonable manner As to alarm or disturb Or evoke a breach of the peace So this is about The manner in which someone Acts that causes Alarm or a disturbance Right Are you saying To follow up on Justice Thomas' question Is this statute unconstitutional No Because it attacks It focuses on the manner In which the speech took place No I'm not saying that Because the courts have already found Previously that Illinois' Conduct is constitutional As long as it is interpreted In view of the First Amendment So what the case law clearly says Is when the only Because it says It only does any act When the only act is speech It's not about unreasonable manner Your speech can be unreasonable Under the First Amendment The only thing your speech cannot be Is a true threat or a fighting word So in this case We don't look at whether or not His conduct has to be judged On a different standard In view of the First Amendment And his conduct can only be criminalized If it falls under the definition Of a true threat or a fighting word Thank you Do you want to wind up All right now Mr. Bishop Thank you Your Honor Counselor and police and court assistant Attorney General Garza And Mr. Bishop Your Honors I think it is necessary To be specific about The manner in which Defendant inquired As to safety protocols And the operation Of the school In an era of Firearm shootings This is a conversation That defendant was having With the school administrator During the day And the school Administrator's testimony Is that defendant Asked what they would do If he or anyone Arrived on campus With a gun He inquired about Specific questions Like whether the secretary Had a bulletproof window Of where teachers Would be standing In the classroom He referenced recent Incident where a teacher Showed up with a gun And talked about The quote is from The administrator's testimony When you shoot and kill children And you're looking them in the eye And then ask if She would be prepared To sniff the pillow Of their innocence After their death He indicated he was familiar With the school And that he had gone there In a series of instances So the manner In which he inquired About schools Well to be fair though Mr. Fisher you also have To throw into that That he was desiring To enroll his kid at the school He indicated he was Interested in enrolling His kid at the school But he did not Ask about setting up A tour of the campus And asking questions About school shootings And security measures At the school Is that inappropriate? Is that disorderly conduct? Asking the manner In which he did so, yes It was an unreasonable manner To do so that was likely To infect his kid Inside the reach of the police So you're saying Considering the totality Of the conversation That he did not Have weapons And all that sort of thing No it's quite easy Your honor to imagine A manner in which One could inquire About those kinds of things That would not Tend to incite An immediate breach of the peace And that's to be clear Your honor I'm not arguing That simply because The topic of conversation In the first amendment Is because the manner In which he made these inquiries Were such that They would tend to incite An immediate breach of the peace Defendant points to Pertell I actually think Pertell Is telling in some ways In its contrast Because Pertell talked about That speech is protected Unless it has a tendency To provoke violence Or an immediate breach of the peace And Pertell is in that case That simply made people Feel bad That's sort of the inflict Injury kind of language That's been discarded by the court This is different These are words That this administrator And any reasonable person In this administrator's shoes Would have heard And would have felt As she did A need to reach out To this administrator I think the appellate court Even used the words Morbid, some of the language Is morbid, creepy, disturbing That's all well and good And I'm not saying I disagree And there's certainly An element of instability In saying these words But there aren't exceptions To the first amendment Based on something being morbid So we have to be careful That we're not creating As a result of The fact that We don't like what was said Absolutely, your honor And just because speech is morbid Or lurid Or I forget the third term That the appellate court used By itself would not Mean that it is exempt From first amendment protection As the defendant points out Things that people don't like to hear Are entitled to first amendment protection And perhaps that's where When that's done in a manner That is likely to incite Immediate breach of the peace Now we're outside the protection Of the first amendment And that's what the disorderly conduct Statute expressly goes to In its term There is another reason Why speech here Is unprotected by the first amendment And that is because It did constitute A true threat Or a reasonable person As a true threat To be clear I don't think that the court held In a way that this court Has posed deference That his words were a true threat Attempt is a specific intent to crime I do think that the court held That he did not have The specific intent To transmit a threat Under that other statute Where he was found not guilty But the legal question Of whether his words Were a true threat Is one that this court Can review to make Its own determination But don't we agree Wouldn't you agree That the cases have said That there has to be an intent In the true threat context I don't think so your honor I think that the Standard for true threats Was essentially universally Understood to be a reasonable person Standard And how a reasonable person Perceived the words Up until Virginia v. Black Since Virginia v. Black There's absolutely a split Of authority A minority of courts Have held that Virginia v. Black Indicated a need For a specific intent Requirement for something To constitute a true threat The majority of circuits Continue to apply And one Exception Is to protect listeners Against the fear of violence And the destruction That that fear engenders And because the purpose Of the true threat statute Is focused on the impact On the listener A test that looks to Whether the words Are going to have The impact on the listener Or protecting against The threat To have a subject of intent test Because the object of intent Sufficiently differentiates Between unprotected threats And unprotected speech If you look to Watts for example Which is one of the Essential cases That sort of discuss in this doctrine They took language That on its face Absolutely constituted a threat If they hand me a rifle The first person in my sights Would use an objective standard Looking at the context Any reasonable person Would have understood That it was in fact Protecting the listener That's important, the context I think one of the things I think you'd agree If we use an objective standard The statement, let me get it correct What if he or someone else Came to the school with a gun What would happen? But don't we look at that As a threat to enroll In the school And that he wasn't Indicating that he personally Was going to show up On school grounds with a gun Just that he wanted to know What the protocol was If someone did? Don't we look at that context as well? Well the court looks at All of the context And so I absolutely Think that that context is relevant I disagree with the suggestion That the school administrator While students are on campus And his other Statements during the course Of the conversation The specificity of some Of the questions he asked The familiarity with guns The fact that he had been Kicked out of the school I think that his speech In context A reasonable person In the school administrator's position Would understand it to be To commit violence Against the students at the school But yes the court Could look at the context And say that This doesn't satisfy An objective person standard It doesn't require the court I think to make the mistake Of imposing a subjective intent Element onto The true threats doctrine If the court looked at The entirety of the speech In context And determined a reasonable person Would not have perceived it As a sincere expression Of intent to commit violence Could I ask where Elonis fits in I mean in Elonis Which follows Black In some ways is very similar To this case Where there's a person Who creates a persona On Facebook And says this is just Seems somewhat Like what we have here And at the end of the day The United States Supreme Court Doesn't use objective subject But talks about mental state And said there has to be A mens rea A guilty mind of the Defendant in this case What did he know What did he intend And in fact reverses The conviction here For a new trial So how does Elonis Fit into your He doesn't use the word subjective Robert doesn't use the word Objective or subjective But he really is talking about What is there has to be A state of mind element As to the defendant So I don't actually think Elonis is particularly Telling one way or the other About this case Which is why the majority Of the circuits that Continue to apply Objective tests after Black Also continue to do so Or say that there was An objective standard for True threats after Elonis The statute at issue In Elonis was silent As to mens rea The courts below Had consistently applied An objective reasonable Person standard And yes it had been That that objective reasonable Person standard was sufficient To provide, to differentiate Protected speech from true threats But the court wound up Making a determination that When we're differentiating Criminal conduct from Innocent conduct Typically what we do Is we look to knowing Our intentional conduct And so in the absence Of an articulated mens rea That would be the way I don't think that Elonis actually provides Much guidance beyond How to interpret A criminal statute That's silent as to mens rea And that's why For the most part It hasn't had an effect On how circuits have applied To the true threats after Innocence So Elonis is saying That there has to be A guilty mind To have a specific Impact On a reasonable person Is that objective or subjective? Well so I think that there's Requirement of subjective Intent for that statute I read Elonis as being About the interpretation Of a specific At the end of the day As being about an interpretation Of a specific statute That's posed in the face Of silence on a criminal statute As opposed to answering Explicitly it avoids Answering any question About what would be required By the first amendment Here we have a very different statute It does require a knowing act But we also know From this part's interpretation And quite clearly from The legislative history That the effect On the listener Is that it It's not lost We live in such A polarized society I think we can agree on that The reasonable person standard 50% of the people Think one way And 50% of the people Think the other As to what would be Reasonable or not And that's why the Subjective We have to address And I hate to get On the soapbox But I just think that If people don't like What they're hearing Most of the time They shout it down If we don't like What we're hearing It still may have First amendment protections And again if we go back To the objective standard What's reasonable to me Today might not be As bipartisan or divided As they were for example During Vietnam era War protests Which is the setting For the decision in Watts And the court Was perfectly comfortable Using objective standard There to differentiate Threats from protected speech Didn't feel the need To look at all To speaker's subjective Intent to make that Demonstration during The Vietnam era Which was obviously Certainly also a contentious period In our political history And our political discourse So the mere fact that The rhetoric is perhaps More aggressive or hostile Now than it is at some Other periods in history Doesn't change the fact That a subjective test Is sufficient to Differentiate protected speech From the purpose In some ways Of the true threats Option of protecting Listeners against the fear Of violence and disruption That it engenders And do you agree With your opponent That this is exclusively About speech and not about Conduct Yes your honor The act that he engaged In here that constitutes All that's at issue here Is his speech I would disagree If the implication is That the reading of This court's opinion And certain opinion In prior Israeli conduct Cases is that The only way in which The manner of speech Can become unreasonable So that it is likely to Incite immediate breach Is by raising someone's voice Or being directly in front Of the person here Speaking to You know I think that We have to look at The context of the entire Conversation and we can Acknowledge that the manner Of the speech here Encompasses all of the Things that were said Including what would you do If I or someone else Would show up on campus That he'd been kicked out Of the school All of this is relevant To asking the question Of whether he engaged In this speech in a manner That was reasonably likely To provoke an immediate breach Of the peace as it did here Mr. Fisher aren't all Those questions hypotheticals That were posed to the Administrator when he says If and if And speech alone Isn't that still the law Well it has to So Under the statute The speech has to be done In a manner that is Reasonably likely to provoke An immediate breach of the peace And then under the first Amendment his speech Was unprotected for The state of two different Separating either one of them One because It was reasonably likely To incite an immediate Breach of the peace The sort of place where Someone misleadingly Titled fighting words Doctrine and the Disorderly conduct statute Sort of mirror each other To a certain extent And also because A reasonable person Would have understood it As a sincere expression Of an intent to inflict Harm or hypothetical Terms the state position That a reasonable person Given the full content Of that conversation Would have understood it As a sincere expression Of an intent to inflict harm Even if that's not what he Whether or not that's what He meant to indicate Unless the court Has further questions People ask that this court Affirm the decision So I want to be very clear That to hold that Fighting words are any Words which cause a Breach of the peace Is to stretch that Definition until it breaks That's absolutely not what The U.S. Supreme Court Says fighting words are And I would go back to The definition in Virginia v. Black Fighting words it says We have held Personally abusive epithets Which when addressed To an ordinary citizen Are as a matter of Common knowledge Inherently likely to provoke A violent reaction It's not just words that Cause breach of the peace It's words that we all know If you say to someone It will cause them to react Violently that's what Fighting words are And I think going to And censorship unless It's shown to produce A clear and present Danger of a serious Substantive evil That rises above Public inconvenience Annoyance or unrest It is not just that The police are called That does not prove Fighting words It has to be this Serious substantive evil Of I said something The Supreme Court Has a very good analysis Of why insults sent In an email Would not be fighting words And I think we have that here too We have words spoken over the phone Additionally we don't have Personally abusive epithets here We don't have insults That as a matter of Common knowledge Are inherently likely To cause a breach of the peace Nothing in the conversation Specifically was insulting To Ms. Christophe But there was nothing That we can all agree Are those fighting words That would cause a violent reaction And factually really over the phone We can't have a violent reaction here But I also want to So it's very clear This is not fighting words Because fighting words Are not just words That cause the police To be called So let me ask a question About Alanis And how does Alanis Fit in here Now although Mr. Fischer Is correct Alanis decided Not to determine the First Amendment question Because the Supreme Court Said well we don't have A mental state here What is very important About Alanis and why Other later cases like Dutcher from the 7th Circuit have a statute About threats And what the Supreme Court Said is where this is A statute about threats We need to have Proof that either the Speaker knew Or intended to threaten Or they made the statement Knowing that the listener Would view it as a threat And that's what the 7th Circuit picks up on In Dutcher which the Speaker made the statement Despite knowing subjectively That it would be Interpreted as a threat So there does need to be Intent on the part of the Speaker here in order to Bring this under the purview Of the true threat But again Mr. Fischer is Talking about a reasonable Person Ms. Kristopa who We have no evidence whether Or not she's a reasonable Person but she testified So where we have people Hearing the conversation Saying there's no threat I don't see how it's possible There could be a true threat Unprotected by the First Amendment I think The First Amendment As I began Broadly is meant to Protect all speech Unless it falls into These narrow defined Categories and it's because He called a school And wants to enroll his son His primary concern was Enrolling his son in a school That had increased security Not a public school Because he was concerned About school shooting He asked questions about that And then he did make Statements that I think Were political ones About why these security Measures were needed Why it's important to Protect all speech So I think that Whether the speech was Unreasonable It's still protected By the First Amendment Speech that's unreasonable Unpopular or upsetting Is still protected It's only those very Specific categories Of true threats And fighting words That are not protected And I think that Even if it's really upsetting For someone to think about Nonetheless They don't meet the Definition of true threats Or fighting words So because here Mr. Swenson, his only Conduct was speech And none of his speech Was in the category That's unprotected Under the First Amendment It cannot be criminalized Here Case number 124688 People versus State of Illinois John Swenson Will be taken under Advisement as Agenda number 4